IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAQUIN ANTONIO SOTELO TARIN,<br><br>Plaintiff,<br><br>v.<br><br>ERIK BONNAR, et al.,<br><br>Defendants. | Case No. 19-cv-00519-CRB<br><br>**ORDER RE MOTION FOR PRELIMINARY INJUNCTION** |

Petitioner Joaquin Antonio Sotelo Tarin ("Mr. Sotelo") is a 37 year-old U.S. Navy veteran who was born in Mexico. See MPI (dkt. 4) at 1. He has a U.S. citizen wife, four U.S. citizen children, and he is facing removal. Id. In a lengthy bond hearing, an immigration judge ("IJ") heard evidence of Mr. Sotelo's "extensive and serious" criminal history, and also of his remarkable efforts to turn his life around. See Newman Decl. (dkt. 4-1) Ex. D (3/8/17 IJ written explanation); id. Ex. C (1/12/17 IJ order). The IJ concluded that DHS had not met its burden of demonstrating that Mr. Sotelo posed a danger to the community or was a flight risk, and she released him on bond. Id. Ex. D at 2. The BIA then issued two orders, first reversing that determination, and then denying Mr. Sotelo's motion to reconsider and reopen. See id. Ex. F (10/25/17 BIA order); id. Ex. H (12/26/18 BIA order). Mr. Sotelo is likely to succeed in demonstrating that both orders were unlawful. Accordingly, on Monday February 11, 2019, this Court GRANTED Mr. Sotelo's motion for preliminary injunction, enjoining ICE from re-arresting him until the Court rules on his habeas petition. See MPI at 1. The Court now provides its reasons for doing so.

## I. BACKGROUND

### A. Petitioner's History

Mr. Sotelo was born in Mexico and brought to the United States when he was about ten years old. Newman Decl. Ex. A (Sotelo Decl.) ¶ 1. He has lived in the United States for more than 25 years. Id. Mr. Sotelo suffered severe abuse as a child at the hands of his mother and grandmother. Id. ¶¶ 15–27.

Mr. Sotelo joined the Navy in April 2001, see Newman Decl. Ex. J, and was deployed to Iraq, Kuwait, and Afghanistan in the years immediately following 9/11, Newman Decl. Ex. A ¶¶ 33–53. During his time in the Navy, Mr. Sotelo received several medals. Newman Decl. Ex. K. His deployments during war were "dangerous and scary," and made him "anxious and stressed." Id. ¶ 37. He describes his military experience in depth in his declaration in this case. Id. at ¶¶ 33–53. Mr. Sotelo found himself "affected by the traumatic events [he] had seen and the stressful environment." Id. ¶ 44. He "started drinking alcohol to blow off some of the steam that was building up" and eventually "was drinking just about every day." Id. ¶¶ 48–49. He was honorably discharged in 2006. Newman Decl. Ex. J.

Although he had no criminal record before entering the military, Mr. Sotelo received several convictions relating to his substance abuse, including DUI, possession of controlled substance, hit and run, and domestic violence. Newman Decl. Ex. B (IJ transcript) at 45–48 ("My alcohol and drug use, it is very obvious that it was . . . very strong in between those years. I was doing pretty bad. I was not making the right decisions."); Meneses Decl. (dkt. 13-2) ¶¶ 6–13 (listing criminal history). In July of 2013, Mr. Sotelo was convicted of felony corporal injury on a cohabitant. Meneses Decl. ¶ 12.

Mr. Sotelo first encountered ICE while in criminal custody in 2013. On August 14, 2013, ICE issued a Notice to Appear, initiating removal proceedings against him based on the Immigration and Nationality Act ("INA") § 240. Meneses Decl. Ex. C. He was charged with removability under INA § 237(a)(2)(B)(i), as an alien convicted of a

2

violation of a law relating to a controlled substance, and INA § 237(a)(2)(E)(i), as an alien convicted of a crime of domestic violence. Id. On that same day, ICE issued an Order of Release on Own Recognizance pursuant to INA § 236(a) and released him. Meneses Decl. ¶ 14.

In October of 2014, Mr. Sotelo was convicted of felony corporal injury on a spouse, felony dissuading a witness, and a misdemeanor violation of a protective order. Id. ¶ 13. He was sentenced to two years of incarceration, but the judge then terminated the probation for his 2013 case and sentenced him to three years of incarceration. Id.

Mr. Sotelo describes entering prison in 2015 as a "wake-up call," and the catalyst for deciding to change his life. Newman Decl. Ex. A ¶ 64. In prison, he participated in a three-month anger management class, which "forced [him] to truly examine [his] own anger, and where it comes from, and to recognize how [he] had been unable to control it in the past." Id. ¶ 67. He met and worked closely with a pastor, started going to church services, and was baptized as a Christian. Id. ¶¶ 65, 69. And he devoted himself to self-improvement by reading more than 40 self-help books focused on how to create healthy relationships. Id. ¶ 70.

In September of 2015, after he had served about 50% of his sentence, Mr. Sotelo was released for good behavior. Id. ¶ 79. He was immediately transferred to ICE's custody. Id. ¶ 80. While in ICE custody, Mr. Sotelo continued his rehabilitation, seeking out residential substance abuse treatment, violence prevention classes, and mental health services through the VA. Newman Decl. Ex. B at 73–81 (testimony before IJ re rehabilitation plan post-ICE detention); Newman Decl. Ex. A ¶ 84 ("I have already made arrangements to begin a six-month inpatient substance abuse rehabilitation program through the U.S. Department of Veterans Affairs. I also plan to attend domestic violence offender intervention programs that are tailored specifically to the needs of vets."). The IJ ultimately released Mr. Sotelo from immigration detention to facilitate his participation in those programs. Newman Decl. Ex. B at 110.

Since entering custody, Mr. Sotelo has remained sober. Newman Decl. Ex. A ¶ 76.

Since leaving custody in January 2017, he completed a six-month residential substance abuse program and several other out-patient rehabilitative programs through the VA. Newman Decl. Ex. M (10/26/17 Ferrara Letter). His social worker at Veterans Justice Outreach described Mr. Sotelo as "among the most remarkable veterans I have worked with and his resilience, perseverance and hard work have resulted in him meeting and exceeding his many goals." Id. She listed and described the six "treatment and services" that Mr. Sotelo "availed himself [of] and [was] actively engaged in," and concluded that she had "witnessed [Mr. Sotelo's] continued motivation to live a healthy and productive life as he has accessed the support and services he earned as a veteran." Id.

Mr. Sotelo began steady employment and is now enrolled in college classes. See Newman Decl. ¶ 34. He successfully completed "At Ease," a 52-week violence prevention group for domestic violence offenders specifically tailored to veterans. Newman Decl. Ex. O (5/24/18 Ramirez Letter). The leader of his group stated that "[Mr. Sotelo] demonstrated significant personal growth, learning and maturity." Id. Mr. Sotelo was chosen as the "group senior advocate" because of his "commitment to the program, and consistent application of program teachings." Id. The leader opined: "It is my belief, that he has come to the group motivated, to effect change in his life, and he has accomplished this." Id.

Mr. Sotelo successfully completed parole, and his parole officer gave him a California Static Risk Assessment score of one, the lowest possible score that calculates likelihood of reoffending. Newman Decl. Exs. Q, R (parole agent letters).

Since his release, Mr. Sotelo has married and had a child.[1] Newman Decl. Ex. S (wife's letter); Newman Decl. ¶ 35. His wife is a U.S. Citizen and holds a master's degree in social work. Newman Decl. Ex. S. She believes that Mr. Sotelo is "a true inspiration that change is possible." Id.

Mr. Sotelo has become a community activist, speaking in churches, with elected

---

[1] That child, now 10-months old, was recently admitted to the emergency room with an unexplained fever and requires follow-up visits. See MPI at 23.

4

officials, and the media. Newman Decl. ¶ 33. In February of 2017, he spoke at a rally for due process on the steps of San Francisco City Hall, after which city supervisors voted to fund legal representation for detained individuals in deportation proceedings. Id. In May of 2017, he met with legislators in Sacramento about providing similar funding in the state budget, which they did later that year. Id. In June and October of 2017, Mr. Sotelo spoke at churches about his experiences of rehabilitation and transformation. Id. He regularly speaks at churches across the Bay Area, where those he meets "applaud his efforts to confront" his past mistakes, and believe him "an asset, not a danger to our community." Newman Decl. Exs. W, X (Johns, Shelleda Letters).

### B. IJ Bond Hearing and Order

On January 5, 2017, Mr. Sotelo appeared before IJ Elizabeth Young for a bond hearing pursuant to Rodriguez v. Robbins ("Rodriguez III"), 804 F.3d 1060 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez ("Jennings"), 138 S. Ct. 830 (2018). Before the hearing, Mr. Sotelo submitted more than 150 pages of evidence regarding his rehabilitation, community ties, and plan to enter VA treatment and violence prevention classes upon release. Newman Decl. ¶ 13. DHS submitted evidence of Mr. Sotelo's past convictions. MPI at 6.

Mr. Sotelo testified at length, though the beginning of this testimony was not transcribed due to a recording error. See Newman Decl. Ex. B (incomplete transcript starting in middle of testimony); see also Newman Decl. Ex. E (DHS motion to remand, asserting that "respondent's January 5, 2017, Rodriguez bond proceeding was only partially recorded."). In the part of his testimony that is not transcribed, Mr. Sotelo testified regarding the 2014 domestic violence incident. Newman Decl. ¶¶ 14–15. In the part of his testimony that is transcribed, Mr. Sotelo took responsibility for his mistakes and the hurt he caused others. Newman Decl. Ex. B at 39 ("I am responsible. . . . For putting myself in that predicament. Like I said, I could have walked away. . . . I didn't just hurt the victim. I hurt, I hurt my children, I hurt everybody. I hurt a lot of people. I was, I was

doing wrong. I was not thinking right at the time."), 70 ("This whole time I've been wrong. I've been wrong this whole time. That's what caused me to make all these bad decisions. I'm not happy to say this, but I was a coward. I was a coward. I faced things the wrong way that I shouldn't have, and I'm sorry for doing so."). He explained his efforts to transform his life and reported that he had been sober for several years and had apologized to his family. Id. at 67–73. He reiterated his commitment to engage in residential treatment through the VA. Id. at 69. The IJ found him "honest and truthful." Id. at 72.

The IJ also heard testimony from Mr. Sotelo's social worker at the VA, who stated that Mr. Sotelo would likely be accepted to a VA-sponsored residential rehabilitation program if he were released. Id. at 77–78. The IJ continued the hearing for a week to enable the social worker to secure a spot for Mr. Sotelo. Id. at 83. At the continued hearing on January 12, 2017, the social worker testified again about transferring Mr. Sotelo directly to a rehabilitation facility. Id. at 98–103. The IJ found that release to the rehabilitation program was appropriate. Id. at 110. She set bond at $10,000 and imposed three conditions of release: (1) that he complete the 6-month residential rehabilitation program; (2) that he attempt to seek the jurisdiction of the Veterans Justice Court; and (3) that he participate in the "At Ease" 12-month domestic violence offender rehabilitation program or a similar program after his release. Id. at 110. He was released on January 18, 2017. Newman Decl. ¶ 21.

The IJ subsequently issued a bond memorandum explaining her reasoning. Newman Decl. Ex. D. She wrote:

> The Court finds that, on this record, DHS has not met its burden of demonstrating that Respondent poses a danger to the community and is a flight risk. Respondent's convictions are serious, with several domestic violence incidents where there was serious harm, as well as alcohol and substance abuse related convictions. However, Respondent freely admits that he has a substance abuse problem, and is seeking ways to find treatment. Although he has received self-help treatments while incarcerated, Respondent cannot receive full treatment including psychological and mental health evaluations and

> treatments. As an alternative to detention, Respondent requests to be transferred to a residential treatment facility, where he would not pose a danger to the community. . . . Based on Respondent's willingness to work with the Veterans Affairs LCSW, the Veterans Affairs psychologist, and various rehabilitation facilities and programs, the Court finds that DHS has not met its burden of establishing that Respondent poses a danger to persons or property.

Id.

### C. BIA Order of October 25, 2017

On January 31, 2017, DHS filed a notice of appeal of the IJ's order, indicating that DHS planned to file a full brief at a later date. Newman Decl. ¶ 22. It never filed a full brief. MPI at 7. Instead, DHS filed a motion to remand "for the purpose of conducting a new bond proceeding" because the first part of the January 5 bond hearing had not been recorded. Newman Decl. Ex. E ("given that the first half of the respondent's Rodriguez bond proceeding was not recorded, and the Department has taken an appeal of the Immigration Judge's grant of a bond, a remand is necessary"). Mr. Sotelo cross-appealed regarding the bond amount, and opposed DHS's appeal and motion to remand. Newman Decl. ¶¶ 23, 27.

On October 25, 2017, without having received an appellate brief from DHS, BIA issued an order (1) sustaining DHS's appeal, (2) dismissing Mr. Sotelo's appeal, and (3) denying DHS's motion to remand. Newman Decl. Ex. F (10/25/2017 BIA order). The BIA recognized that DHS had the "burden of establishing by clear and convincing evidence that [Mr. Sotelo] presents a danger to the community such that he is not eligible for bond." Id. It held that Mr. Sotelo's "criminal history spans over 10 years, involving multiple arrests and/or convictions for domestic violence, hit and run, driving under the influence, and drug possession." Id. It discussed his "most recent conviction." Id. Although the BIA recognized Mr. Sotelo's "strong family ties to the United States and the fact that "he intends to continue seeking treatment for his substance abuse problems," it held that "these factors do not serve to mitigate his dangerousness." Id. It further held, "we are not persuaded that the Immigration Judge's imposition of the release conditions

were appropriate under the circumstances." Id. The BIA noted that "respondent's participation in the residential program appears to be voluntary, which does not substitute for a custodial setting." Id. The BIA concluded that "[i]n light of the nature and gravity of the respondent's successive criminal convictions, we conclude that the respondent poses a danger to the community." Id. It ordered him held without bond during the pendency of his removal hearings. Id. The BIA found the partial recording of the IJ bond hearing inconsequential, as Mr. Sotelo had "not claim[ed] any error and opposed remand," and the parties had been able to brief their appellate positions without a full transcript. Id.

### D. BIA Order of December 26, 2018

On November 21, 2017, Mr. Sotelo filed a motion to reconsider and, alternatively, to reopen to the BIA. See Newman Decl. Ex. G. He supplemented the record with evidence of his rehabilitation since his release from ICE custody. Id. ("In the last ten months at liberty, Mr. Sotelo has proven the appropriateness of these alternatives, complied with all conditions, and become an inspiring speaker and community leader."). Mr. Sotelo continued to live at liberty.

On December 26, 2018, the BIA issued an order denying Mr. Sotelo's motion to reconsider or reopen. Newman Decl. Ex. H (12/26/2018 BIA order). The BIA did not address Mr. Sotelo's arguments on the merits. Instead, it explained that during the pendency of his motion, the Supreme Court reversed the Ninth Circuit's Rodriguez decision, holding that there was no statutory basis for periodic bond hearings during the course of their detention. Id. (citing Jennings v. Rodriguez, 138 S. Ct. 830 (2018)). The BIA stated that "In this case, the Immigration Judge's January 12, 2017, custody order and subsequent bond memorandum dated March 8, 2017, and our October 25, 2017, decision were based on Rodriguez, which is no longer controlling." Id. The BIA held: "Thus, in light of Jennings, we will deny the respondent's motion to reconsider." Id.[2]

---

[2] Presumably this order also denied Mr. Sotelo's motion to reopen.

8

**E. Ongoing Removal Proceedings**

Since the initiation of his removal proceedings, Mr. Sotelo has appeared numerous times before the immigration judge, most recently in August 2017. Newman Decl. ¶ 29. At that hearing, Mr. Sotelo denied the charge of removability and asserted that he believes he might be a U.S. citizen. Id.; see also Newman Decl. Ex. A ¶ 34 ("One of the first things the Navy recruiters told me was that I would become a citizen."). He submitted (1) a U.S. government document from a military background check which stated that a government official had "viewed [a] certificate of citizenship" for Mr. Sotelo, as well as (2) an FBI background check document indicating Mr. Sotelo's citizenship as "U.S." Newman Decl. ¶ 29. The IJ continued the hearing to allow DHS to submit evidence to prove that Mr. Sotelo is not a United States citizen. Id.; see Ayala-Villanueva v. Holder, 572 F.3d 736, 737 n.3 (9th Cir. 2009) (after individual submits evidence of citizenship, DHS bears burden of establishing all facts underlying removal by clear and convincing evidence). That hearing is set for December 12, 2019. Newman Decl. Ex. U.[3]

**F. This Litigation**

On January 14, 2019, ICE sent a letter to Mr. Sotelo's bond obligor, requiring her to present Mr. Sotelo at an ICE office on January 31, 2019. Newman Decl. Ex. I. An ICE officer told Mr. Sotelo's counsel that ICE planned to arrest him on that date. Newman Decl. ¶ 43. On January 28, 2019, an Assistant United States Attorney told Mr. Sotelo's counsel that the check-in date had been rescheduled to February 12, 2019, and that ICE did not intend to arrest him before that date. Newman Decl. ¶ 46; Newman TRO Decl. (dkt. 3) ¶ 3. Mr. Sotelo filed a motion for temporary restraining order, which this Court granted, noting that ICE's intention not to arrest Mr. Sotelo until February 12, 2019 is not the same thing as an assurance that ICE will not arrest Petitioner until February 12, 2019." Order Granting TRO (dkt. 12) at 2. The Court set a briefing schedule and scheduled a hearing on

---

[3] At the motion hearing before this Court, the government agreed to search Mr. Sotelo's military records for evidence of his citizenship and to report back to this Court on the matter forthwith.

1 Mr. Sotelo's motion for a preliminary injunction for February 11, 2019. Id. at 2–3.

## II. LEGAL STANDARD

A preliminary injunction should issue where the plaintiff establishes that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." See Rodriguez v. Robbins, 715 F.3d 1127, 1133 (9th Cir. 2013). The Ninth Circuit has adopted a "sliding scale approach" such that "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III. DISCUSSION

Petitioner argues that he is likely to succeed on the merits because (A) the BIA's December 2018 Order was unlawful; (B) the BIA's October 2017 Order was unlawful; and (C) he has a liberty interest in his conditional release and a due process right to a hearing prior to his re-detention. See generally MPI. He further argues that (D) he faces irreparable harm absent an injunction, and that the balance of the equities and public interest also favor an injunction. Id.

### A. Likelihood of Success: BIA December 2018 Order

Mr. Sotelo argues that he is likely to succeed in showing that the BIA's December 26, 2018 Order denying his motion to reconsider or reopen is unlawful. See MPI at 10–13. BIA's December 2018 order did not address any of Mr. Sotelo's arguments on the merits, but denied his motion in light of Jennings. See Newman Decl. Ex. H. Under Rodriguez III, the Ninth Circuit had held as a matter of statutory construction that individuals detained for more than six months were entitled to periodic bond hearings. Rodriguez III, 804 F.3d at 1085. In Jennings, the Supreme Court reversed that statutory holding. See Jennings, 138 S. Ct. at 842. The BIA in the instant case held simply that Mr. Sotelo's

1 January 2017 bond hearing and the October 2017 BIA decision were based on Rodriguez, and that Jennings had overruled Rodriguez, so his motion to reconsider should be denied. Id. Mr. Sotelo argues that this is unlawful because (1) the BIA should not have applied Jennings retroactively, and (2) even if Jennings applied retroactively, he was nonetheless entitled to a bond hearing as a constitutional matter. See MPI at 10–13. Mr. Sotelo is likely to succeed on both arguments.

### 1. Retroactivity

As a general rule, a court's decisions interpreting a statute apply retroactively only to non-final cases still pending on direct appeal. See Nunez-Reyes v. Holder, 646 F.3d 684, 690 (9th Cir. 2011). The BIA had already denied Mr. Sotelo's direct appeal, see Newman Decl. Ex. F (10/25/17 BIA order granting DHS's appeal and denying Mr. Sotelo's appeal), and a motion to reconsider does not undo the finality of a BIA order, Alvarenga-Villalobos v. Ashcroft, 271 F.3d 1169, 1182 (9th Cir. 2001) (retroactivity not appropriate on collateral review); Pablo v. INS, 72 F.3d 110, 113 (9th Cir. 1995) (finality of deportation order not affected by filing of motion for reconsideration). Based on the general rule, then, Jennings should not apply retroactively to Mr. Sotelo's case.

In certain circumstances, courts may depart from the general rule. See Nunez-Reyes, 646 F.3d at 690; Chevron Oil Co. v. Huson, 404 U.S. 97, 106–07 (1971) (considering whether decision establishes new principle of law, whether retroactive operation will further or retard the rule's operation, and whether decision could produce substantial inequitable results if applied retroactively). Those circumstances are not present here. Jennings announced a new rule of statutory construction by "overruling clear past precedent upon which litigants" relied in obtaining bond hearings. See Nunez-Reyes, 646 F.3d at 692 (listing Chevron Oil factors). Because individuals released in Rodriguez bond hearings have already been found not to be a danger or flight risk, retroactive application of Jennings would not further the rule's operation. See id. And it would produce "substantial inequitable results" to apply Jennings retroactively and re-arrest all

11

those individuals who posted bond and regained their liberty based on Rodriguez III. See id.

Accordingly, the BIA was likely wrong to apply Jennings retroactively to Mr. Sotelo's case.

### 2. Constitutional Right to Bond Hearing

Even if Jennings applied to Mr. Sotelo's case, however, it only spoke to the issue of detainees' statutory right to periodic bond hearings; it did not address detainees' constitutional right to a periodic bond hearing. See Jennings, 138 S. Ct. at 851 (declining to decide whether the Constitution separately required such hearings, and remanded that question to the Circuit). On remand from Jennings, the Ninth Circuit expressed "grave doubt" that prolonged detention without a hearing would satisfy due process. See Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government."). And courts in this district have likewise found that due process requires a bond hearing after prolonged detention. See Rodriguez v. Nielsen, No. 18-cv-4187-TSH, 2019 U.S. Dist. LEXIS 4228, at *17–19 (N.D. Cal. Jan. 7, 2019) (hearing necessary after six months); Gonzalez v. Bonnar, No. 18-cv-5321-JSC, 2019 U.S. Dist. LEXIS 12636, at *18–21 (N.D. Cal. Jan. 26, 2019) (13 months); Meza v. Bonnar, No. 18-cv-2708-BLF, 2018 U.S. Dist. LEXIS 94664, at *8 (N.C. Cal. June 4, 2018) (13 months). At the time of his detention hearing, Mr. Sotelo had been detained for more than 15 months. Newman Decl. Ex. A ¶ 80.

Accordingly, Mr. Sotelo is likely to succeed in arguing that had a due process right to a bond hearing, separate and apart from the statutory right recognized in Rodriguez III and rejected in Jennings.

### 3. Prejudice

DHS does not really dispute Mr. Sotelo's arguments that the December 2018 BIA order was unlawful; rather, it argues that Mr. Sotelo was not prejudiced by it. See Opp'n (dkt. 13) at 6–8. DHS contends that "BIA was permitted to deny [Mr. Sotelo's] motion

12

solely in its discretion," and that this Court "would not have jurisdiction to review that decision." Id. at 7. It cites to two statutory provisions precluding judicial review of discretionary decisions. Id. (citing to 8 U.S.C. § 1252(a)(2)(B)(ii), 8 U.S.C. § 1226(e)).

It is true that courts lack jurisdiction to review discretionary decisions by the BIA. See Hassan v. Chertoff, 543 F.3d 564, 566 (9th Cir. 2008) (because government denied application for adjustment, in part, as a matter of discretion, court lacked jurisdiction to review claim). But the BIA did not deny Mr. Sotelo's motion as a matter of discretion; it denied the motion because it misapplied the case law. See Newman Decl. Ex. H ("Thus, in light of Jennings, we will deny the respondent's motion to reconsider."). Courts do have jurisdiction to review a motion for reconsideration to determine whether it relied on an incorrect legal premise. See Bonilla v. Lynch, 840 F.3d 575, 581, 588 (9th Cir. 2016).

Moreover, prejudice "means that the outcome of the proceeding may have been affected by the alleged violation." Rendon v. Holder, 603 F.3d 1104, 1109 (9th Cir. 2010). In Rendon, a non-citizen applied for cancellation of removal, a form of discretionary relief; the IJ excluded certain testimony and denied her a continuance to collect additional evidence. Id. at 1109–10. The Circuit explained that the IJ's discretion was "not without limits." Id. at 1110. It held that the exclusion of evidence and the denial of a continuance "prevented [the petitioner] from fully and fairly presenting her case," and that "the outcome of the hearing may have been affected by these procedural deficiencies." Id. at 1111.

Here too, Mr. Sotelo was prevented from fully and fairly presenting his case, because the BIA did not consider either his arguments that the BIA's October 25, 2017 order was flawed, or the new evidence he submitted of his continued rehabilitation, including letters from his parole officer and community members. See Newman Decl. Ex. G (motion to reconsider and reopen, including 40 pages of "Documents Demonstrating that Mr. Sotelo has Complied with the Conditions of Release, Remained Peaceful and Sober, and Become a Public Speaker and Community Leader"). The BIA's decision might have been different had it considered Mr. Sotelo's motion on the merits. That is prejudice.

13

1    For these reasons, Mr. Sotelo is likely to succeed in his argument that the December

2    26, 2018 BIA order was unlawful.

### B. Likelihood of Success: BIA October 2017 Order

Mr. Sotelo next argues that he is likely to succeed in arguing that the BIA's October 25, 2017 Order—which sustained DHS's appeal, dismissed Mr. Sotelo's appeal, and denied DHS's motion to remand—was unlawful. See MPI at 13–18. He makes a number of arguments in support of this point, but two are particularly meritorious.

#### 1. Appellate Factfinding

Mr. Sotelo's first meritorious objection to the BIA's October 25, 2017 order is that it contains appellate factfinding, which violates BIA's regulations. See id. at 15–17. BIA regulations provide that it "will not engage in factfinding in the course of deciding appeals." See 8 C.F.R. § 1003.1(d)(3)(iv) (further stating, "[i]f further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge"); Zumel v. Lynch, 803 F.3d 463, 475 (9th Cir. 2015) (BIA "may review an IJ's factual findings only to determine whether the findings are clearly erroneous," "may not make its own findings or rely 'on its own interpretation of the facts.'"); Salazar-Levya v. Sessions, No. 17-cv-4213-EMC, 2017 U.S. Dist. LEXIS 119064 (N.D. Cal. July 28, 2017)) (granting TRO based on improper BIA factfinding).

Mr. Sotelo points to the language in the BIA's order where, having broadly stated that his "criminal history spans over 10 years," it then focused on his 2014 conviction. See id. at 16; Newman Decl. Ex. F. The BIA wrote: "The respondent's most recent conviction—felony corporal injury to a spouse, violating a protective order, and dissuading a witness—occurred while his immigration proceedings were pending (IJ at 1; Exs. RB7-8)." Id. It continued:

> According to the police report, the respondent hit the victim in the face and several times in the head with a closed fist causing visible injuries during an argument. The respondent also threatened one of the victim's children, who was present

14

> during the physical altercation, when she attempted to call for help (Exh. RB-7 at 6–11). In light of this conviction, the respondent's probation on a prior felony corporal injury on a spouse conviction was revoked, and he was sentenced to 3 years' imprisonment (Exh. RB-8).

Id. (emphasis added). The IJ never made factual findings about the accuracy of the police report or any of the events leading up to Mr. Sotelo's 2014 arrest. See Newman Decl. Ex. D. And indeed, during Mr. Sotelo's testimony, he contradicted some of the assertions in the police report. See Newman Decl. ¶ 14 ("Mr., Sotelo said that, contrary to the police report, he did not threaten his ex-girlfriend's daughter."). The IJ found his testimony "honest and truthful." Newman Decl. Ex. B at 72. In contrast, "[p]olice reports are not especially useful instruments for finding out what persons charged actually did." See Olivas-Motta v. Holder, 746 F.3d 907, 918–19 (9th Cir. 2013) (Kleinfeld, J., concurring). DHS argues in opposition that the BIA did not actually "state that the contents of the police report were true," it "merely acknowledg[ed] that such evidence existed in the record and relied on the facts found by the IJ." Opp'n at 10. This is disingenuous. The BIA did not merely acknowledge that the report existed—it relied on it for the order's only description of one of Mr. Sotelo's crimes. See Newman Decl. Ex. F. This was improper.

### 2. Incomplete Record of IJ Bond Hearing

Mr. Sotelo's second meritorious objection to the October 25, 2017 BIA order is that the BIA made its decision on an incomplete record. See MPI at 17–18. "Due process requires a contemporaneous record of [prolonged detention bond] hearings," which the government "must make available for appeal." Singh v. Holder, 638 F.3d 1196, 1208–09 (9th Cir. 2011). Despite DHS's assertion to the contrary, see Opp'n at 12, as discussed above, the BIA focused on the truth of the contents of the police report, and it did so without the benefit of Mr. Sotelo's testimony about the same incident before the IJ. That prejudiced Mr. Sotelo.

The BIA was on notice that there was only an incomplete transcript of the IJ's hearing because DHS had moved to remand the case for the purposes of conducting a new

15

hearing, citing the incomplete record. See Newman Decl. Ex. E (citing Rodriguez III for the holding that "bond proceedings 'shall be recorded or transcribed so that a written record can be made.'"). But the October 25, 2017 order dismissed this concern, stating that "the parties were able to brief their positions on appeal notwithstanding the transcription errors." See Newman Decl. Ex. F. Not so— DHS never actually submitted an appellate brief, and so it did not raise the 2014 arrest, and so Mr. Sotelo was not on notice that the BIA was focused on the 2014 arrest.

Nor is it satisfactory to say that Mr. Sotelo waived this issue because he opposed DHS's motion to remand. See id. ("The respondent, however, does not claim any error and opposed remand"); Opp'n at 12 ("Petitioner himself waived his right to a full recorded hearing in his opposition to a motion to remand"). Had Mr. Sotelo known that the BIA would base its order granting DHS's appeal on improper factfinding about the 2014 conviction, about which his testimony was lost, no doubt he would not have waived his right to a transcript. The BIA's reliance on an incomplete record of the hearing smacks of error. Because that error meant that Mr. Sotelo was denied meaningful appellate review, the error was likely prejudicial. See Larita-Martinez v. INS, 220 F.3d 1092, 1095 (9th Cir. 2000) (due process violation requires error and prejudice).

Mr. Sotelo is likely to succeed in his argument about the October 25, 2017 BIA order.

### C. Due Process Right to Hearing Before Re-Arrest

Mr. Sotelo's final argument in support of preliminary injunction is that even if the BIA orders were lawful, due process entitles him to "a pre-deprivation hearing" to determine the appropriateness of re-incarceration and whether he is currently a flight risk or a danger to the community. See MPI at 18–23. The Court does not reach this argument as it appears that Mr. Sotelo is likely to succeed in arguing that the two BIA orders at issue are unlawful.

### D. Remaining Winter Factors

Absent a preliminary injunction, the Court's TRO would have expired on February 12, 2019, at 5:00 P.M., after which ICE would presumably detain Mr. Sotelo when he appears at the ICE sub-office. See generally Order Granting TRO. The Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)." Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017) ("subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained."). As the Court has already noted, re-arrest threatens to separate Mr. Sotelo not only from his wife and four children, but from the support services he is currently receiving from the VA, which have assisted him in his remarkable rehabilitation. See Order Granting TRO at 2. He has more than established irreparable harm.

The balance of equities also tips in Mr. Sotelo's favor. In contrast to the harm to Mr. Sotelo and his family if he is re-detained, any impact to DHS would be minimal. A preliminary injunction simply preserves the status quo, as Mr. Sotelo has been at liberty for the last two years. During that time, he has complied with the terms of his parole, and completed residential rehabilitation and other VA programs. See Newman Decl. Exs. Q, R (parole letters), M, O (Ramirez letters); Salazar-Levya, 2017 U.S. Dist. LEXIS 119064, at *4 ("there is no indication that, while [petitioner] was free from detention on bond, there were any problems. Given these circumstances, the balance of hardships tips sharply in [his] favor.").[4]

Finally, keeping Mr. Sotelo at liberty is in the public interest. Mr. Sotelo has been a community leader and activist. Newman Decl. ¶ 33; see also Newman Decl. Ex. AA (Ho letter) ("making a positive impact in our community."). Given his rehabilitation, the

---

[4] DHS's response that "Even while on probation for a number of offenses and while in removal proceedings, Petitioner continued to engage in criminal conduct," Opp'n at 16, overlooks the fact that Mr. Sotelo ceased engaging in any criminal activity when he ceased abusing substances in 2015, see Newman Decl. Ex. A ¶ 76. 2

17

expenditure in detaining him would not benefit the public. See Hernandez, 872 F.3d at 996 (noting "general public's interest in the efficient allocation of the government's fiscal resources" and that "costs to the public of immigration detention are 'staggering.'"). In addition, the public has an interest in upholding constitutional rights. See Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005). It is not in the public's interest to deprive Mr. Sotelo of his liberty based on two unlawful BIA orders.

## IV. CONCLUSION

For the foregoing reasons, provided that Petitioner deposit a bond of $1,000 into the registry of the Court within ten days of this Order, the Court GRANTS the motion for preliminary injunction, and ENJOINS Respondents Erik Bonnar, Ronald D. Vitiello, Kirstjen M. Nielsen, and Matthew G. Whitaker from re-arresting or re-detaining Petitioner at any point until the Court has heard and ruled on Petitioner's habeas petition.

**IT IS SO ORDERED.**

Dated: February 12, 2019

CHARLES R. BREYER
United States District Judge

18